UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

STEPHANIE BARNETT,

    Plaintiff,

vs.                                                          Civil Action No. 14-cv-01765-JAP-GPG

THE BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF MONTROSE

    Defendant.

## **COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

### BACKGROUND

This employment gender and/or pregnancy discrimination case was tried before a jury from July 13, 2015 to July 17, 2015 in the federal courthouse in Grand Junction, Colorado. The jury found in favor of Plaintiff and awarded back pay damages of $270,000.00, compensatory damages of $32,500.00 for pain and suffering and humiliation, and special out of pocket damages of $3,900.00.

The Court, not the jury, is obligated to rule on the Plaintiff's claim for front pay damages. Having considered the evidence from the trial of this case, the evidence presented to the Court outside the presence of the jury, and both parties' proposed findings of fact and conclusions of law (Doc. Nos. 94 and 96), the Court now makes the following Findings of Fact and Conclusions of Law, in accordance with Fed. R. Civ. P. 52(a)(1), regarding front pay damages.

## FINDINGS OF FACT

1. Plaintiff is thirty-six years of age and has a Bachelor's of Science, a Certificate of Public Management, and a Masters of Public Administration and has been employed in various positions in the field of government administration.

2. In November 2007, Plaintiff began working at the County of Montrose as a seasonal/temporary employee earning $25.00 an hour.

3. In August 2009, Plaintiff began working part time for the County of Montrose as a regular employee earning $27.13 an hour.

4. In February 2011, Plaintiff was promoted to the Director of Internal Services for the County of Montrose. Plaintiff began working full time in this position and earned $2846.15 bi-weekly.

5. On March 15, 2013, when the County of Montrose terminated Plaintiff's employment, Plaintiff had a base salary of $82,000.00 per year plus benefits; for the calendar year 2012, Plaintiff's total compensation comprised of her base salary, an annual bonus, retirement matching, and health insurance benefits exceeded $100,000.00.

6. In February 2013, about four weeks before Defendant terminated Plaintiff's position as Director of Internal Services, Plaintiff informed the Montrose County Manager that she was pregnant. Plaintiff proposed to the Montrose County Manager that she reduce her workload and work part time for the County of Montrose for the duration of her pregnancy. Plaintiff's request for a part time position was based on being pregnant and having had severe complications with an

earlier pregnancy during which Plaintiff was placed on bed rest. Plaintiff informed the Montrose County Manager that she was concerned with the amount of stress involved in her full time position as Director of Internal Services and that she hoped to reduce stress by working part time for the County of Montrose during the pregnancy. If permitted to work part time during her pregnancy, Plaintiff intended to return to full time work as soon as possible after her pregnancy.

7. Plaintiff was willing to continue in the full time position of Director of Internal Services if part time work could not be made available for her. Plaintiff had three children and needed to continue working. Plaintiff never intended to be a stay at home mom.

8. Plaintiff believed she had the support of the Montrose County Manager to work part time for the duration of her pregnancy. The details of Plaintiff's part time work proposal were not finalized.

9. On March 15, 2013, the Montrose County Manager informed Plaintiff that her services with the County of Montrose were no longer needed and that her position of Director of Internal Services was eliminated.

10. Five days after her termination from her position with the County of Montrose, Plaintiff suffered a miscarriage.

11. Because of hostility Plaintiff experienced in the workplace and because of the severe emotional impact on Plaintiff from the termination of her employment with the County of Montrose, Plaintiff is not seeking reinstatement; Defendant County

of Montrose agrees that reinstatement would not be appropriate under the circumstances.

12. By reason of the amount of the jury's award of $270,000.00 for back pay damages, the jury necessarily must have found that Plaintiff would have continued working full time in the position of Director of Internal Services from March 15, 2013, the date of termination of Plaintiff's employment, to the date of trial.

13. After Defendant terminated Plaintiff's position with the County of Montrose, Plaintiff made determined efforts to obtain employment in a position comparable to the position of Director of Internal Services that Plaintiff held with the County of Montrose; however, Plaintiff was unable to gain comparable employment.

14. Since Defendant terminated Plaintiff's position, Plaintiff has performed various types of work, mostly on a temporary basis, including temporary contract work with the County of Archuleta, Colorado, the only work that was similar in nature to the work Plaintiff had performed for the County of Montrose.

15. Since the termination of her position with the County of Montrose, Plaintiff has demonstrated through her work efforts and attempts to find work that she is willing to work.

16. In 2014, Plaintiff gave birth to her fourth child and now has four young children. Having a family of four young children, who are home-schooled, may impact Plaintiff's desire and ability to obtain and perform full time employment responsibilities in positions similar to the Director of Internal Services position.

    The evidence about whether Plaintiff prefers work of a part time nature or full time work was not fully developed at the trial.

17. Since Plaintiff's employment with the County of Montrose was terminated on March 15, 2013, Plaintiff has suffered from a generalized anxiety disorder and has experienced panic attacks and depression in part caused by the Defendant's termination of her position and in part caused by the miscarriage. These matters, along with the stigma associated with being terminated from her employment with the County of Montrose, have contributed to the Plaintiff's inability to find employment similar to that which she had with the County of Montrose.

18. Although Plaintiff is motivated to seek employment, she lives in a small town in Montrose County, a rural part of the State of Colorado, and this significantly limits opportunities for employment in positions for which Plaintiff is qualified by reason of her education and experience. Plaintiff has already endeavored for two years or more, without success, to locate comparable work. Thus, the Court finds that it will take Plaintiff more than five years from March 2013, the date of termination, to find comparable part time or full time employment in the field of government administration. The Court determines that it is likely that, through reasonable and diligent efforts, Plaintiff should be able to find comparable work by March 2020.

19. A number of factors require the Court to limit the front pay award: 1) employees in government administration, as the testimony at trial demonstrated, do not stay in their positions indefinitely; 2) the organization of county government divisions and employment positions is not static; 3) the County of Montrose government

    divisions were reorganized a number of times resulting in both the addition and elimination of jobs and/or job titles; 4) in the years before her termination in March 2013, Plaintiff more often worked on a part time than a full time basis; 5) Plaintiff's circumstances at home have changed since March 2013; 6) Plaintiff presented no evidence that she expected to work for the County of Montrose through the end of her work years; 7) Plaintiff was and still may be willing to work on a part time rather than a full time basis; and 8) front pay calculations become more speculative as they are projected further into the future.

20. The Court finds that $465,011 is a just and equitable front pay award under the evidence presented. The figure of $465,011 represents the present estimated value of income that Plaintiff will have lost from the date of trial through March 2020, the date Plaintiff should be able to secure suitable part time or full time employment on a steady basis, and is adjusted to include the estimated marginal federal and state tax rates and Social Security and Medicare tax implications.[1]

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact, the Court makes the following Conclusions of Law:

1. Front pay is an equitable remedy awarded by the Court. *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 1000 (10th Cir. 2005). The concept of front pay is "a monetary award equal to the gain the plaintiff would have obtained if reinstated." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 951 (10th Cir. 1998). "In determining

---

[1] The Court will issue a separate decision resolving Plaintiff's Motion for Entry of Judgment and Pre and Post-Judgment Interest.

whether, and how much, front pay is appropriate, the district court must attempt to make the plaintiff whole, yet the court must avoid granting the plaintiff a windfall." *Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158, 1177 (10th Cir. 2003) (citation omitted).

2. Front pay is money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). In cases where reinstatement is not viable due to continuing hostility between the plaintiff and her employer or because of psychological injuries the plaintiff has suffered as a result of discrimination, the Court may order front pay damages as a substitute for reinstatement. *Id.*

3. The determination of front pay damages is subject to the Court's discretion. *Carter v. Sedgwick County, Kan.*, 929 F.2d 1501, 1505 (10th Cir. 1991). The Court considers numerous factors in assessing an appropriate front pay award, "including work life expectancy, salary and benefits at the time of termination, any potential increase in salary through regular promotions and cost of living adjustment, the reasonable availability of other work opportunities, the period within which the plaintiff may become re-employed with reasonable efforts, and methods to discount any award to net present value." *Whittington*, 429 F.3d at 1000–01 (citations omitted). The Court also may consider all evidence presented at trial concerning the individualized circumstances of both the employee and employer. *Id.*

4. A front-pay award must specify an end date and take into account any amounts that plaintiffs could earn using reasonable efforts. *Carter*, 929 F.2d at 1505.

5. The determination of front pay "requires the district court to predict future events and consider many complicated and interlocking factors …, including the possibilities of promotions, demotions, terminations, changes in business circumstances, and death." *Goico v. Boeing Co.*, 347 F. Supp. 2d 986, 992 (D. Kan. 2004) (citation omitted). Such unknowable factors make a front pay award somewhat speculative but a defendant may not take advantage of the fact that its unlawful conduct was the cause of such uncertainty. *Id.* (citations omitted).

## CONCLUSION

After considering all of the evidence and the law as it applies to this case, the Court concludes that Plaintiff is entitled to an award of front pay in the total sum of $465,011. The Court will enter a separate Judgment in favor of Plaintiff.

_____
SENIOR UNITED STATES DISTRICT JUDGE
United States District Court
for the District of New Mexico