**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

U.S. Magistrate Judge Gordon P. Gallagher

Civil Case No. 14-CV-1765-JAP-GPG

STEPHANIE BARNETT

    Plaintiff,

v.

The BOARD OF COUNTY COMMISSIONERS of the COUNTY OF MONTROSE

    Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter comes before the Court as a result of Plaintiff's Motion for Attorney's Fees and Costs (ECF #106)[1], Defendant's Response (ECF #111), and Plaintiff's Reply (ECF #113). By order of reference (ECF #112) and in accordance with 28 U.S.C. § 636(b)(1)(B) and D.C.Colo. LCivR 72.1C this matter has been referred to the Magistrate Judge. In addition, the Court has reviewed Plaintiff's Supplemental Motion (ECF #114) to which there was no response. The Court has reviewed the pending motion, the response, the reply and all exhibits attached thereto. The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises. Oral argument would not materially assist the Court in filing a recommendation as to this motion. The matter is fully briefed. Based upon the entirety of the

---

[1] "(ECF #106)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this recommendation.

record, the Court RECOMMENDS the following: with regard to Plaintiff's Motion (ECF # 106), *et seq.*, an award of attorney/paralegal fees in the amount of $198,330.72 and costs/expenses in the amount of $14,643.94 for a sub-total of $212,974.66.[2] In addition, the Court RECOMMENDS an award of attorney/paralegal fees with regard to Plaintiff's Supplemental Motion (ECF #114) in the amount of $10,805 (no ½% reduction being taken from this award, to be explained below) and an award related to the same filing of costs/expenses in the amount of $933.88. Total RECOMMENDED award of: $224,713.54.

Plaintiff in this Title VII action prevailed at trial and ultimately secured a total award in excess of $750,000.00 (inclusive of $465,011.00 in front pay). Plaintiff's Counsel now seeks attorney's fees and costs ($203,990.25 in attorney/paralegal fees and $14,643.94 expenses for a total request of $218,634.19) as well as supplemental amounts as addressed above from ECF #114. Absent unusual circumstances, prevailing plaintiffs are entitled to reasonable attorney's fees and the plaintiff bears the burden of establishing the entitlement to those fees. *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

Defendant, while not debating the overall right of Plaintiff to claim such fees or that Plaintiff prevailed, does dispute the amounts based upon the following factors:

1. Excessive hourly rates (this includes the experience of each counsel ((time and subject matter)) and the geographic jurisdiction of each counsel);

---

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

      2.      Inadequate documentation in the invoice/block billing;

      3.      Excessive time and duplication of services; and

      4.      Billing for unnecessary and/or inappropriate expenses.

Exercising its discretion, a district court may award a reasonable attorney fee to the prevailing party in a Title VII action. *See* 42 U.S.C. § 2000e-5(k). The prevailing plaintiff is ordinarily "to be awarded attorney's fees in all but special circumstances." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 417 (1978); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1492 (10th Cir. 1994) (same). To obtain attorney fees, "a claimant must prove two elements: (1) that the claimant was the "prevailing party" in the proceeding; and (2) that the claimant's fee request is "reasonable." *Robinson v. City of Edmond,* 160 F.3d 1275, 1280 (10th Cir. 1998). To qualify as a prevailing party, a plaintiff must obtain at least some relief on the merits of her claim. *See Farrar v. Hobby,* 506 U.S. 103, 111 (1992). In other words, the plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought. *Id.*

"The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1249 (10th Cir. 1998) (internal citations omitted); *see also Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1210 (10th Cir. 1986) (internal citation of quotation marks omitted) ("It is Plaintiff's burden to prove and establish the reasonableness of each dollar, each hour, above zero.") The amount of the fee award is committed to the district court's discretion, but the "lodestar"—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate—is "presumptively reasonable." *Jane L. v. Bangerter,* 61 F.3d 1505,

1509 (10th Cir. 1995) (citing *Blum v. Stenson,* 465 U.S. 886, 888 (1984)); *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.,* 616 F.3d 1098, 1102 (10th Cir. 2010).

The first step in calculating the lodestar is the determination of the number of hours reasonably spent by counsel. *Case,* 157 F.3d at 1250. The prevailing party bears the burden of proof in establishing this number "by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id.* Additionally, the prevailing party must exercise billing judgment and make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley* 461 U.S. *at* 434. Where such an effort appears "inadequate, the district court may reduce the award accordingly." *Id.* at 433; *see also Carter v. Sedgwick County, Kan.,* 36 F.3d 952, 956 (10th Cir. 1994) (same).

The second step in calculating the lodestar is the determination of the reasonable rate per hour, that is, "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 483 U.S. 711 (1987). The relevant market rate is the local market rate. *Id.* In making this determination, a district judge "may turn to her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." *Bee v. Greaves,* 910 F.2d 686, 689 n. 4 (10th Cir. 1990).

1. Calculating the appropriate hourly rate:

   a. The appropriate market rate (both market and reasonable rate):

This calculation involves two steps: first, determining what the relevant community is; and second, determining the relevant market rate within the defined community.

The case in this matter was originally assigned to District Judge Robert Blackburn from the District of Colorado. Ultimately, the trial was conducted by Senior District Judge James Parker from the District of New Mexico. The jury trial occurred in Grand Junction with counsel for the Plaintiff from Grand Junction and Defense counsel from Montrose.

The United States District Court for the District of Colorado encompasses the entire State of Colorado. With the exception of the two part-time Magistrate Judges, all judicial officers for the court, which includes seven Article III Judges, five Senior Article III Judges, and six full-time Magistrate Judges, have Denver as their duty station. For a number of reasons, including distance, geography, weather, Federal land, and Tribal land, Magistrate Judges have long been stationed on the Western Slope in both Durango and Grand Junction. This is in keeping with the Court's mission: to serve the public by providing a fair and impartial forum that insures equal access to justice in accordance with the rule of law, protects rights and liberties of all persons, and resolves cases in a timely and efficient manner. While the District of Colorado has divided the State into four jury divisions, which insures participation by a maximum number of citizens in both grand and *petit* juries and simultaneously reduces travel time and expense, the District of Colorado is one unified District.

The question is how to determine the boundaries of the relevant community under such circumstances? Is the relevant community the entire District of Colorado, which has most of its work and presumably the highest legal rates in Denver, or is it each individual community? If it is each community, do we look to the community with the closest factual nexus to the case

(Montrose), the community where the case was tried (Grand Junction), the community for the District Judge who was assigned to the case (Denver), the community for the District Judge who tried the case (Albuquerque), or some conglomeration of all these disparate communities? Should attorney's fees be subject to the vagaries of who tried the case, of where (within the District) an attorney might choose to live,[3] or where the District Judge presiding over the trial thought it most convenient to conduct the trial. The Federal Court has one courtroom in Grand Junction. What if that courtroom was busy and the trial was thus held in Denver, would that effect the attorney's fee calculation? What if the Court was held, as sometimes occurs in criminal cases, in a borrowed State courtroom in a smaller community such as Gunnison? It seems fundamentally unfair to subject litigants to this degree of uncertainty in the matter of attorney's fee calculation.

The District of Colorado is a unified District with one Clerk of Court, one set of Local Rules, and a unified CM/ECF filing system. The requirements to practice and standards of practice are no less stringent in Grand Junction than in Denver. This Magistrate Judge believes and recommends that the relevant community is most appropriately defined as the entire District of Colorado. It would be fundamentally unfair to give parties the opportunity to try cases in far flung areas of the District and then financially penalize or reward them based on which courtroom door they walk into for trial. It would be equally unfair to reward or punish parties in an attorney's fee dispute for their choice of abode or work[4] within the District while simultaneously requiring compliance with the same standards of practice and the same expertise

---

[3] For example, the State of Colorado is divided into judicial districts. The Ninth Judicial District includes Pitkin County (Aspen with very high legal rates) and Rio Blanco County (Rangely with very low legal rates) and has its main courthouse at Glenwood Springs (legal rates in the middle). Should an attorney be prejudiced if they choose to live on one side of judicial district versus the other?

[4] Some firms have multiple offices within the State of Colorado. Should a firm fear a reduction or increase in legal fees based on which office an attorney is based in or should said firm be able to best utilize its resources by assigning whatever counsel is best suited to handle a particular matter?

6

necessary to litigate in Federal Court.  *See  Coppedge v. Franklin County Bd. Of Educ.*, 345 F. Supp.2d 567 (E.D.N.C. 2004) (determining that the entire district was the relevant community in school desegregation litigation); *see also  Blissett v. Casey*, 969 F. Supp. 118 (N.D.N.Y. 1997) (*certiorari* denied 119 S.Ct. 2392) (prevailing community for determining rates is the district in which the court sits);  and *see also  Sexcius v. Dist. Of Columbia*, 839 F. Supp. 919 (D.D.C. 1993) (attorney's fees in civil rights litigation determined more broadly not based on some "submarket").

Having determined that the relevant community is the entire District of Colorado, the next determination is to decide the prevailing market rate within that community.  "The prevailing market rates in the relevant community . . ." is that which is "[i]n line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Missouri v. Jenkins,* 491 U.S. 274, 286, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).  Plaintiff lists the following individuals as having worked on the case and requests the following rates for each (in addition, the chart below gives a brief summary of the attorney's experience and qualifications as culled from the briefs):

    a.    Mr. Nicholas Mayle        $400 per hour;

9 years in practice.  Equity shareholder with Killian, Davis, Richter & Mayle (KDRM) since 2012.  Lead counsel on numerous matters.  Top 40 under 40 for Colorado by National Trial Lawyers Association.

    b.    Mr. Azbell    $300 per hour;

7 years in practice.  Was an AUSA then into private practice.  History of litigating employment cases.

  c.  Mr. Groves    $300 per hour;

    7 years in practice.  Mostly civil litigation with some employment work.

  d.  Mr. Petroski   $250 per hour;

    5 years in practice.  Focused on civil litigation, appeals and motions practice.

  e.  Paralegals    $75 per hour.

Plaintiff has provided, as to each attorney seeking fees and as to one paralegal, an affidavit setting forth that individual's experience, qualifications, and billing rates (ECF #s 106-1 *et. seq.*).

Defendant has responded, including a report from William A. Rogers, III, Esq. (ECF #111-1) a partner with more than 25 years experience from Wood Ris & Hames P.C.  Mr. Rogers believes that the fees sought by Plaintiff's Counsel are unreasonable because:  the billing attorneys do not have that much experience (particularly in this discrete field of civil rights litigation), no one would pay these fees on an hourly basis, the attorneys are charging too much for the location in which they work (Grand Junction, although the Court has already determined that to be irrelevant as the entire District is the relevant marketplace).  Mr. Rogers believes the hourly rates should be as follows:  Mayle ($250), Groves ($225), Azbell ($225) and Petroski ($150).

Plaintiff replied (ECF #113) essentially stating that the Defense is wrong, that these rates are reasonable and are justified based on a number of factors including prior rulings by other judicial officers on this Court.  Perhaps most interesting in Plaintiff's Reply (ECF #113 pp. 2-3) is Plaintiff's assertion that the fees charged by the unsuccessful Defense attorneys in this action

8

met or exceeded Plaintiff's fees.

The Court is not persuaded by any of the affidavits supplied by the parties, as they are all largely conclusory. Each recites the affiant's opinion that the rates he advocates for are typical in the community, but none of them provide any specific factual support for those opinions which persuades the Court. As an inherently quantifiable matter, one would hope for a basis for the espoused opinion such as evidence of specific rates actually charged by various law firms in the community for this specific work, e.g.; what hourly fee has a successful civil rights litigation attorney received in an analogous action with an analogous result? Under these circumstances, the Court gives little weight to either side's arguments as to the appropriate hourly rate.

Instead, the Court resolves this dispute by examining other sources of evidence as to reasonable rates in the District of Colorado area. First, the Court turns to recent reported decisions from this District that address contested hourly rates. In *Center for Biological Diversity v. U.S. Fish and Wildlife Serv.,* 703 F.Supp.2d 1243, 1249–50 (D.Colo.2010), a case focusing on environmental issues, Senior Judge Daniel found an hourly rate of $400 appropriate for "an experienced environmental litigator with over 17 years of experience." In *Casey v. Williams Production RMT Co.,* 599 F.Supp.2d 1253, 1256 (D.Colo.2009), Judge Arguello found, "based on the Court's own knowledge," a claim of a $400 hourly rate for a "experienced personal injury litigators in the Denver market" is "unreasonably steep," and the prevailing hourly rate is "more like $350 per hour." These cases suggest that the prevailing rates in Denver (which includes a substantial percentage of the attorneys who practice in the U.S. District Court for the District of Colorado) for experienced litigators approach $400 per hour in recent years. This Court also considers *Universal Drilling Co. v. Newpark Drilling Fluids, LLC,* D.C. Colo. Case No. 08–cv–2686–MSK-CBS, Docket # 48, 2011 WL 715961 (Feb. 22, 2011). There, the Court noted the

contents of a 2008 survey by the Colorado Bar Association that found that, as to partners in large firms, the median billing rate was $400 per hour; with a rate of $541 constituting the 95th percentile of reported rates.  *See also Xtreme Coil Drilling Corp. v. Encana Oil & Gas, Inc.,* 958 F.Supp. 2d 1238, 1256 (D.Colo. 2013), appeal dismissed (Sept. 30, 2013) (stating "These cases suggest that the prevailing rates in Denver for experienced litigators approach $400 per hour in recent years.").  The Court would note that the last case mentioned went to trial in September, 2012.

Based on these cases (adjusted for inflation) and the Court's own familiarity with the range of prevailing rates in the District of Colorado market, *see generally Guides, Ltd. v. Yarmouth Group Property Mgmt., Inc.,* 295 F.3d 1065, 1079 (10th Cir.2002) ("where a district court does not have before it adequate evidence of prevailing market rates, the court may use other factors, including its own knowledge, to establish that rate"), the Court finds that a reasonable hourly rate for lead counsel in a case such as this is $400 per hour.  The Court also finds reasonable the rates sought of $300 for Mr. Azbell and Mr. Groves and the rate of $250 for Mr. Petroski.  While not opposed by the Defense, the Court finds $75 to be eminently reasonable for the paralegal work.

b. The lodestar analysis:

This Court will apply the familiar "lodestar" analysis: first, the Court calculates a "lodestar" figure by multiplying a reasonable hourly rate by the number of hours reasonably incurred by Plaintiff's counsel.  *See generally Gisbrecht v. Barnhart,* 535 U.S. 789, 801–02, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002) ("the 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence").  Second, the Court addresses whether that

lodestar figure should be adjusted upwards or downwards based on the particular circumstances of the case, although adjustments to the lodestar figure are made only in unusual situations. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). The goal of the exercise is to produce "an award that **roughly** approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A ex rel. Winn,* 559 U.S. 542, 130 S.Ct. 1662, 1672, 176 L.Ed.2d 494 (2010) (emphasis added). The applicant seeking fees bears the burden of demonstrating that the hours expended and rates charged are reasonable. *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1201 (10th Cir.1986).

However, in making this calculation, "the district court need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.' " *Malloy v. Monahan,* 73 F.3d 1012, 1018 (10th Cir.1996) (citing *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1203 (10th Cir.1986)); *see also Fox. v. Vice,* ––– U.S. ––––, ––––, 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011) ("trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees ... is to do rough justice, not to achieve auditing perfection.").

The following is a breakdown by firm and attorney/paralegal of Plaintiff's request:

    Azbell and Groves:  $109,931.25

    Azbell              296.4 * $300 =    $88,920.00

    Groves             54.35 * $300 =    $16,305

      Azbell paralegal      62.75 * $75 =      $4706.25

      KDRM:      $94,059

      Mayle      190.7 *$400 =      $76,280

      Petroski      36.6 * $250 =      $9,150

      KDRM paralegal      121.22 * $75 =      $9091.5

Total request based on above numbers: $203990.25 (not including litigation expenses).

The Court first analyzed the above requested amounts in terms of could the number of hours requested under the circumstances be reasonable. The Court has already determined that the hourly rate sought by each attorney is a reasonable rate. Essentially, Plaintiff seeks a bit in excess of 762 hours total labor (approximately 19 full-time weeks of work) stretched over approximately 2 years. Given the nature and circumstances of the case, the number of filings and nature of those filings, as well as all other attendant circumstances, the Court does not find that 762 total hours of work is unreasonable. Nor unreasonable is the number of hours spent by each attorney/paralegal.

The Court next reviewed each and every time sheet, log, data entry and request from the Plaintiff. The Court then compared each of those numbers to specific complaints or concerns addressed by the Defense. The Court will address many of those concerns below:

2.      Inadequate documentation in the invoice/block billing:

Defendant claims that the Plaintiff has provided inadequate documentation and has essentially "block billed" thus making it difficult or impossible to determine the validity of any

specific billing entry in terms of amount of time spent and nature of the work done. Having reviewed the billing entries from the two Plaintiffs firms involved in this action, the Court does not find merit to this argument. In fact, the Court finds that Plaintiffs' billing records are relatively thorough and compete. So much so that the thoroughness will compel the Court to recommend a slight reduction based on some charges which should have been eliminated or written off from the bill. The Court does not intend to spend more time on this area other than to say that Plaintiffs' records are not sloppy, they are not shoddy, they are not imprecise and they allow the Court to determine, with sufficient description, the nature of the work performed. The Court can discern, without any guesswork, what the specific task was that was completed and the amount of time spent on that task.

3. Excessive time and duplication of services:

The Court does not find that the amount of time spent on any specific task was excessive or that there was a duplication of services. Specifically, Defendant complains that 7.7 hours was spent by one attorney on one day working on summary judgment matters and offers case law suggesting that a time entry over six hours should be scrutinized. Scrutiny does not mean excision and a bare assertion that 7.7 hours response time was not required is just a bare assertion, justifying no action by the Court to strike the amount.

Another constant in Defendant's argument as it applies to this area has to do with collaboration, *see e.g.* Defendant's Response (ECF #111, p. 8) stating that "[a] second glaring example of excessive time . . ." is essentially collaboration in the preparation of jury instructions (3 attorneys spent a total of 25 hours on the instructions).

Attorneys do not work cloistered in some cell or ivory tower. Attorneys, particularly in a firm environment, work as part of a collaborative process which requires give and take, review and response. Exchange of ideas and understandings with regard to legal theories and facts should generally lead to a better and more efficient process to best serve the client in keeping with the tenants of Federal Rule of Civil Procedure 1 which encourages the "[j]ust speedy and inexpensive . . ." determination of actions. Particularly with regard to what would be considered critical stages of the civil action: claim construction, dispositive motions, depositions, trial, jury instructions, etc., one would expect to see time entries showing that more than one attorney worked on that stage of the proceeding and provided input and experience from their perspective. Humans are not robots and thus are not completely fungible. The input one attorney gives might be different than the proffer of another, thus justifying multiple attorneys engaging in review or drafting of the same document. Of course, collaboration does not justify duplication and the Court must be aware of and on the look out for billing duplication.

Certainly, Plaintiffs' billing has numerous examples of multiple attorneys engaging in work around the same topic: e.g., jury instructions, summary judgment, trial preparation, deposition preparation for the Plaintiff herself. However, the characterization of this billing as a "glaring example of excessive time as well as duplication of services" (ECF #111, p. 8) is a logical and factual leap this Court will not take. The Court does not find that there was either excessive time nor duplication of services. The specific topics for which multiple attorney time was billed appear, on their face, to legally justify such time.

4.     Billing for unnecessary and/or inappropriate expenses:

One Defendant, Mr. Roy Eckert, was dismissed early in the action, apparently for tactical reasons. Plaintiff has tried, although not completely successfully, to excise all billings related to this dismissed Defendant from the fee request. It appears, as was pointed out by the Defense from their review of the billing statements and somewhat ironically as it was Plaintiff's detail in the statements that showed the mistake, that some billing entries regarding Eckert remain in the overall bill, e.g.; the Azbell bill (ECF # 106-2, p 7, item 9/10/14 for 1.7 hours).

Upon review of all the entries that Defendant believes are related to dismissed Defendant Eckert or are otherwise unnecessary for any other reason, the Court finds that these constitute less than 1% of the total billing as it relates to attorneys fees (this does not apply to the request in ECF #114 which appears to be entirely appropriate and correct). Keeping in mind that "the essential goal in shifting fees ... is to do rough justice, not to achieve auditing perfection", *Fox. Id. at* 2216, the Court recommends an overall reduction of the attorney` fee portion of the calculation by ½% ($953.28).

5.   Paralegals:

Azbell and Groves seek reimbursement at the rate of $75 per hour (Azbell paralegal 62.75 * $75 = $4706.25) for paralegal work for Stearns, Alfred, and Vassen. This Court has been provided with absolutely nothing as to their training, experience, education or qualifications. Given this complete dearth of any such information, the Court agrees that the amount of $4706.25 should be struck from the fee request. The burden was on the Plaintiff to show the skills and qualifications of these individuals yet the Plaintiff provided absolutely no information to the Court on this subject. The Court cannot guess as to this and must therefore determine that the Plaintiff did not meet its burden with regard to this discrete request. This is

particularly concerning where we are addressing whether the individuals are paralegals v. legal assistants/secretarial and it is hard to tell from the specific tasks whether they require specialized training or knowledge, e.g.;  bate stamp documents for second supplemental initial disclosure . . . (ECF # 106-2 p. 1).

KDMR seeks fees for their paralegal as follows (121.22 *  $75 = $9091.5).  The Defense does not object to the training or qualifications of Ms. Kirsti Garcia but does argue that approximately half her work was duplicative, unnecessary, secretarial in nature or otherwise should not be allowed.  The Court has reviewed her bill and finds that the tasks in which she was engaged generally go beyond those that would be expected of a legal assistant or secretary and do require special training and experience and justify being billed to the Defense in this action.  In addition, the Court is cognizant of the attempt made to shift costs to a lower billing employee at $75 per hour rather than even an associate level attorney at more than 3 times that rate.  This makes fiscal sense, particularly for the Defense who will now pay these costs.

With regard to the Defendant's argument that the paralegal should not have been at trial, essentially that the attorney should have performed the AV and other functions, the Court does not find merit to this argument.     Trials are difficult, fluid and faced paced events.  Having multiple attorneys paying attention to the jury, the Court and the witnesses is not unreasonable and is to be expected in a trial of this magnitude.  The idea that one of the attorneys should also be occupied with arranging and displaying the AV rather than paying attention to the changing trial landscape is unreasonable.


6.	Fees, costs and other expenses:

Plaintiff seeks $14,643.94 in costs for work up to 9/30/2015. This amount was originally a bit higher but was reduced due to an award as part of the bill of costs by $370.80. The Court has reviewed each expense sought and finds the expenses to be reasonable and appropriate. Each expense was necessary to Plaintiff's reasonable pursuit of the action and should not be stricken.

Conclusion:

The Court has reviewed and considered each of the pleadings and attached exhibits relevant to this motion. The Court has carefully considered the fee and cost request made and exercises its discretion in making this equitable judgment and does not do so mechanically but has instead considered each claimed expense. The Court does so in light of nearly 20 years combined experience between legal practice (both government and private) and judicial experience. The Court recommends a total award of attorney/paralegal fees in the amount of $198,330.72 and costs/expenses in the amount of $14,643.94 for a total of $212,974.66.

Dated at Grand Junction, Colorado, this 14th day of December, 2015.

BY THE COURT:

Gordon P. Gallagher
United States Magistrate Judge